ALFRED E. KENNEY, trustee, complainant-respondent,

*v.*

ELMER KING et al., defendants-respondents.

[Decided June 20th, 1922.]

Appeal of Charles J. Leonori, administrator, &c., defendant-appellant.

On appeal from a decree of the court of chancery advised by Vice-Chancellor Backes, who filed the following opinion:

"At the conclusion of the testimony some time ago, I reached what I thought was the true solution of this controversy, and the arguments of counsel, just finished, sustain the view I then entertained. The case hinges, for the most part, if not entirely, on the testimony of Mr. Rose, with which I was very much impressed, and, I think, counsel, too. It was given in a frank and straightforward manner, with the ring of truth in it, and it came from what I regard as a most satisfactory and dependable source. Mr. Rose is a member of the Pennsylvania bar and a representative citizen of high standing in his community. He has no interest in the outcome of the case, but he came to testify because, as he said, grievous charges of fraud were made against him in the pleadings and he felt that his professional reputation would not permit him to allow them to go unnoticed.

"The facts, as given by him, are these: Queen had a lawsuit pending against Jennings to recover $907,000 commissions due him as broker in the sale of oil stocks. He owed Rose a great deal of money, loaned from time to time, and to secure this debt he assigned to him $302,333 of the broker's commissions—that is the meaning of the assignment—one-third of the $900,000, or $300,000—at least counsel have not challenged that as the correct interpretation. This was the first assignment. Other assign-

ments of the $900,000 were made from time to time to others, three or four. At the first trial of the suit of Queen against Jennings, there was a verdict for a large sum of money—was it $480,000?—which was later set aside as excessive. On the eve of the second trial, the parties to that suit, Jennings and Queen and Queen's assignees—the suit was in the name of Queen and the assignees, or to the use of the assignees—got together and compromised on $375,000, and by stipulation the compromise took the form of a judgment in the supreme court for that sum, which runs to Queen and his assignees against Jennings—a practice with which I am not familiar. The compromise was not only between the plaintiffs and Jennings, but also as between Queen and the assignees, the assignees, other than Rose, agreeing to allotments, and this was stipulated and made a part of the judgment. It came about in this way: On the eve of the second trial, Queen refused to take the stand and testify unless he were given $100,000, and unless Rose would be satisfied with $70,000, and without his testimony—he was the only one who knew anything of the transaction on his side—the whole affair would have gone by the board. It was a plain hold-up. Queen had his way. He was master of the situation, and it was agreed, under pressure, of course, that he should get the $100,000. After the assignees, other than Rose, were taken care of, and Queen's $100,000, and the counsel, there was left $114,000 that fell to Rose under his assignment, but Queen objected to Rose getting more than $70,-000 as his portion of the fund. He wanted the balance for himself, but Rose would not yield. Queen bulldozed, but he could not budge Rose in his determination not to give the excess to Queen, but, finally—there was no other way out—Rose agreed to give it to Mrs. Queen, because, as he said, of his sympathy for her in her financial distress; he had known her and her family for years, and, as I understand it, there had been a long-standing friendship between the Rose and Queen families—or was it Mrs. Queen's family?—and it was so arranged, and the surplus was assigned to Kenney, the complainant, in trust for her. The fund of $375,000 recovered from Jennings was paid to Mr. King, the plaintiff's attorney in the lawsuit. That was part of the stipula-

tion, as I recall, and out of it King has made payments, as he was authorized to do, the propriety of which is not disputed. A creditor of Queen's—Queen is a non-resident—attached the moneys in King's hands, assigned by Rose to Mrs. Queen's trustee, Kenney. Kenney filed this bill against King to recover on his assignment. The attaching creditor is a party and he has counter-claimed, charging that the assignment by Rose to Mrs. Queen's trustee was a fraud upon him, and that the trustee holds the assignment in trust for Rose—that the money in King's hands is Queen's property, and he asks that it be appropriated in payment of his debt. The question resolves itself into this, as I take it: To whom, rightfully, did the money, the $114,000 balance, belong at the time Rose assigned to Mrs. Queen's trustee? Of that I have no doubt. Queen owed Rose far more than that sum at the time. Rose says so, and he fortified his testimony with documentary evidence of the indebtedness, and his testimony stands uncontradicted and, of course, unimpeached. His assignment of the fund was prior in point of time to any other, and superior to all other assignments, and it covered nearly the whole of the sum recovered from Jennings. What remained after the payments of the $100,000 to Queen, and fees to counsel, and shares to the other assignees, he was, in fact and in law, entitled to and it was his right to do with it as he pleased. Surely, at no stage did it, or any part of it, belong to Queen. The hold-up tactics of Queen and the ensuing *impasse* did not change the ownership, though, doubtless, they furnished the motive for the gift to Mrs. Queen. The subject of the gift, the money, was the property of Rose and the complainant is entitled to a decree directing King to pay it to him."

WHITE, J. (dissenting).

My vote for reversal is based upon the fact that when the parties interested were confronted by the necessity of reducing the amounts of their respective shares in the commission of some $900,000, which they claimed Jennings owed Queen (through whom they claimed as assignees of various shares), in order to meet the compromise proposed on the eve of the second trial of

the suit against Jennings, of something like one-third of the sum claimed, Queen, who was a necessary party to the agreement of reduction (not having assigned all his interest), refused to come into the agreement unless Rose (one of the assignees) would place $44,000 of the reduced amount he, Rose, was to receive, in trust for the benefit of Queen's wife, who had no legal right thereto, and Rose as a result of this stand on Queen's part, agreed to make this concession and to place this much of his share so in trust. Rose claims he made this concession because of sympathy with Queen's wife, whose family and Rose's family had been friends for many years. I think the moving cause, however, was Queen's refusal to let the compromise go through unless the concession were made, and that the consideration for the concession was Queen's entering into the compromise agreement. Under these circumstances, I think the legal result was the same as if it had been Queen's money instead of the money of Rose, which was so put in trust, and, consequently, that Queen's creditors are entitled to it.

*Messrs. Ziegner & Lane,* for the defendant-appellant Leonori.

*Messrs. Lum, Tamblyn & Colyer,* for the complainant-respondent.

*Messrs. King & Vogt,* for the defendants-respondents.

PER CURIAM.

We agree with the finding of facts by the vice-chancellor and the propriety of the decree based on those facts. The decree is therefore affirmed.

*For affirmance*—THE CHIEF-JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, BLACK, KATZENBACH, HEPPENHEIMER, WILLIAMS, GARDNER, ACKERSON, VAN BUSKIRK—13.

*For reversal*—WHITE—1.